431 A.2d 959

Perry M. SCOTT and Donna R. Scott, Trustees ad
litem, Appellants,

v.

Donald O. KOPP, Appellee.

Supreme Court of Pennsylvania.

Argued April 22, 1981.

Decided July 8, 1981.

Howard E. Kalis, III, Steven J. Proctor, Pottstown, for appellants.

Edward F. Kane, Norristown, for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

FLAHERTY, Justice.

The question at issue in this case is whether there is a right of recovery under the Pennsylvania Survival Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa. C.S.A. § 3371 or the Wrongful Death Act of April 15, 1851, P.L. 669, § 19, 12 P.S. § 1601 on behalf of a stillborn child who died as a result of injuries received en ventre sa mere.

The pertinent facts of the case as alleged in the complaint are as follows. On May 27, 1976, Donna R. Scott, appellant, was operating an automobile in Montgomery County when she was injured in a head-on collision which occurred when appellee's automobile crossed the center of the highway and struck Mrs. Scott's automobile. At the time of the accident, Mrs. Scott was eight months pregnant. As a result of the collision, Mrs. Scott's child died in utero on or about May 27, 1976 and was stillborn on May 29, 1976 after an induced labor. Count one of the appellants' complaint seeks recovery under the Wrongful Death Act, *supra,* for the anguish of the parents occasioned by the loss of their child, for pecuniary loss, for medical and funeral expenses. Count two demands recovery under the Survival Act, *supra,* for loss of earnings and for pain and suffering of the deceased. The third count of the complaint seeks recovery for physical and mental injuries to Donna R. Scott. In the fourth count of the complaint Perry M. Scott seeks damages for anguish and personal loss, for hospital and funeral expenses, including possible future medical expenses for his wife, Donna R. Scott, and for the loss of assistance and society of his wife. The trial court dismissed the wrongful death and survival actions and the Superior Court affirmed. This appeal followed the Final Order of the Superior Court.

The Survival and Wrongful Death Acts, *supra*, effective at the time of the accident in this case,[1] provide as follows:

**§ 3371.  Actions which survive**

All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

**§ 1601.  Action may be brought after death of party injured**

Whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus occasioned.

Appellants concede that this case is governed by *Carroll v. Skloff*, 415 Pa. 47, 202 A.2d 9 (1964) and *Marko v. Philadelphia Transportation Company*, 420 Pa. 124, 216 A.2d 502 (1966), which do not permit survival or death actions in the case of a stillborn infant, but request that this Court overrule these cases and permit recovery under the Wrongful Death and Survival Acts for death of a child who is stillborn as the result of injuries suffered in an automobile accident. We decline, however, to overrule *Carroll* and *Marko* and affirm the judgment below.

It would be difficult if not impossible to improve upon the clarity and brevity of the *Carroll* and *Marko* cases, and we write here only to emphasize a few of the significant points made in those opinions.  In *Marko*, as in the present case, the real objective of the lawsuit was to compensate the parents of the deceased for emotional distress.  As we stated in *Marko* :

Neither the wrongful death act nor the survival statute contemplates, or ever intended to include, such a claim [i. e. death and survival actions filed on behalf of a stillborn infant].  Also, the mother may seek redress and the com-

1.  The Wrongful Death and Survival Acts have been recodified at 42 Pa. C.S. §§ 8301 and 8302.

pensation due for mental anguish suffered, in her own independent action.

420 Pa. at 126, 216 A.2d at 503.

Chief Justice Bell, concurring in *Marko,* pointed out that a mother may recover for mental anguish only if she sues in her individual capacity and only if the mental anguish was accompanied by or resulted from physical injury.[2]  In other words, in *Marko,* the plaintiff was not without remedy. Since *Marko* was decided in 1966, the No-Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, § 301, 40 P.S. 1009.301 has restricted, but not foreclosed tort liability arising from motor vehicle accidents.  Nevertheless, subject to the requirements of the Act, the anguish which an expectant mother must necessarily feel when her child is stillborn as the result of a physical injury inflicted on the mother's person by the defendant is compensable in an action brought by and on behalf of the mother.

In *Carroll* we pointed out that whereas an action will lie on behalf of an infant *born alive* for damages resulting from injury tortiously inflicted during the infant's fetal existence, neither a survival action nor a death action will lie in the case of a stillborn infant.  415 Pa. 48, 202 A.2d at 10.  There may be no survival action in the case of a stillborn infant because a survival action is strictly derivative.  In order for a survival action to lie, there must have been an *independent life in being, surviving birth,* which could have brought the action prior to death.

2.  In *Niederman v. Brodsky,* 436 Pa. 401, 413, 261 A.2d 84, 85 (1970) we modified the "impact rule" as stated by Chief Justice Bell and held that where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff feared the physical impact, recovery for shock or mental pain may be permitted.  This "zone of danger" requirement was itself modified in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), where we permitted recovery for foreseeable mental injury to a mother who witnessed fatal injury to her daughter when the daughter was struck and killed by an automobile, even though the mother herself was not within the zone of danger.  In the present case, however, the pleadings state that Mrs. Scott suffered physical injury from the collision; therefore, she may bring an action to recover for personal injuries even under the strict requirements of *Marko.*

Additionally, we observed in *Carroll* that the wrongful death action also is basically derivative and was never intended to provide for recovery by the estate of an unborn fetus. *Id.* Among the reasons given for the denial of a death action on behalf of the estate of a stillborn fetus is the following:

> If the infant is born deformed or handicapped as a result of such injuries, justice requires that compensation be given. The responsibility of the parents is immeasurably extended and broadened, or the child may necessarily become a charge upon the community.

415 Pa. 49, 202 A.2d at 11. Harper and James make a similar point in their treatise on torts, where they state that the claim of a stillborn fetus "is far more tenuous and doubtful than that of the child who lives to bear the seal of defendant's negligence with all the conscious suffering and economic loss it may entail." 2 Harper and James, *Torts* § 18.3 (1956).

This view has been criticized because of unfairness that is said to result because representatives of an infant who is injured while in existence as a fetus may recover if it survives birth, *eo instanti*, whereas the representatives could not recover if the infant were stillborn. Admittedly, the requirement of live birth is in some sense an arbitrary requirement, but the line must be drawn somewhere, and wherever it is drawn, it will be the subject of argument and criticism. Perhaps everyone will agree that survival and wrongful death actions require at least that the plaintiff have been alive. But there agreement ends, for some will argue that life begins at conception; others that survival and death actions should be able to be brought when the fetus is viable, i. e., capable of independent existence. We believe, however, that drawing the line at conception or viability or at any point other than birth will not remove the element of arbitrariness, but will merely relocate the difficulty while increasing the problems of causation and damages. *See Endresz v. Friedberg,* 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901 (1969). Further, requiring a live birth

has the advantage of establishing to a legal certainty that there was a living person in existence, thereby bringing any survival or wrongful death action into conformity with other similar actions brought by persons or the representatives of persons who died as a result of wrongful or negligent injuries inflicted by another.

The wrong, if any, in a case such as the present one, is to the parents of the stillborn child, and subject to the restrictions of the No-Fault Motor Vehicle Insurance Act, *supra*, recovery for that injury is adequately protected by lawsuits which may be brought on behalf of the mother for physical and mental suffering, and on behalf of the parents for medical and funeral expenses,[3] as well as on behalf of the husband for loss of his wife's society and assistance.

Order affirmed.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.

LARSEN, J., filed a dissenting opinion in which KAUFF-MAN, J., joins.

LARSEN, Justice, dissenting.

I dissent. The definite trend, and the overwhelming weight of authority (by a margin of more than 2 to 1[1]),

---

**3.** Although the Act of May 13, 1927, P.L. 992, No. 480, § 1, 12 P.S. 1604, The Wrongful Death Act, provides for the recovery of funeral expenses, these expenses may also be recovered under the No-Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, Art. III, § 301, 40 P.S. 1009.301, which provides for the recovery of "loss which is not compensated because of any limitation in accordance with section 202 (a), (b), (c) or (d) of this act." Section 202(a) provides that "allowable expense" as defined in section 103 or a contract for services required shall be provided in an insurance contract. Section 103 defines "allowable expense" to include:

... expenses directly related to the funeral ... of a deceased victim, not to exceed one thousand five hundred dollars ($1,500)
. . . .

**1.** At last count, 27 jurisdictions have expressly ruled in favor of permitting recovery for the death of a stillborn child, at least where the fetus was viable, either in cases of first impression or in decisions reversing prior law. *Eich v. Town of Gulf Shores*, 300 So.2d 354 (Ala.1974); *Hatala v. Markiewicz*, 26 Conn.Sup. 358, 224 A.2d 406

recognizes the right of recovery for the wrongful death of an unborn child resulting from injuries sustained while in its mother's womb. As I believe this trend to be the better

(1966); *Worgan v. Greggo and Ferrara, Inc.*, 128 A.2d 557 (Del.Super. 1956); *Simmons v. Howard University*, 323 F.Supp. 529 (D.D.C. 1971); *Porter v. Lassiter*, 91 Ga.App. 712, 87 S.E.2d 100 (1955); *Chrisafogeorgis v. Brandenberg*, 55 Ill.2d 368, 304 N.E.2d 88 (1973); *Britt v. Sears*, 150 Ind.App. 487, 277 N.E.2d 20 (1972); *Hale v. Manion*, 189 Kan. 143, 368 P.2d 1 (1962); *Mitchell v. Couch*, 285 S.W.2d 901 (Ky.1955); *Odham v. Sherman*, 234 Md. 179, 198 A.2d 71 (1964); *Mone v. Greyhound Lines, Inc.*, 368 Mass. 354, 331 N.E.2d 916 (1975); *O'Neill v. Morse*, 385 Mich. 130, 188 N.W.2d 785 (1971); *Verkennes v. Corniea*, 229 Minn. 365, 38 N.W.2d 838 (1949); *Rainey v. Horn*, 221 Miss. 269, 72 So.2d 434 (1954); *White v. Yup*, 85 Nev. 527, 458 P.2d 617 (1969); *Poliquin v. MacDonald*, 101 N.H. 104, 135 A.2d 249 (1957); *Stidam v. Ashmore*, 109 Ohio App. 431, 167 N.E.2d 106 (1959); *Evans v. Olson*, 550 P.2d 924 (Okl.1976); *Libbee v. Permanente Clinic*, 268 Or. 258, 518 P.2d 636 (1974); *Presley v. Newport Hospital*, 117 R.I. 177, 365 A.2d 748 (1976); *Fowler v. Woodward*, 244 S.C. 608, 138 S.E.2d 42 (1964); *Moen v. Hanson*, 85 Wash.2d 597, 537 P.2d 266 (1975); *Baldwin v. Butcher*, 155 W.Va. 431, 184 S.E.2d 428 (1971); *Kwaterski v. State Farm Mutual Auto Insurance Company*, 34 Wis.2d 14, 148 N.W.2d 107 (1967); *Wascom v. American Indemnity Corporation*, 383 So.2d 1037 (La.App.1980); *Salazar v. St. Vincent Hospital*, 95 N.M. 150, 619 P.2d 826 (1980); *Vaillancourt v. Medical Center Hospital of Vermont, Inc.*, 425 A.2d 92 (Vt.1980).

By comparison, only 12 jurisdictions, other than Pennsylvania, adhere to the rule denying recovery for stillborn infants: *Kilmer v. Hicks*, 22 Ariz.App. 552, 529 P.2d 706 (1975); *Norman v. Murphy*, 124 Cal.App.2d 95, 268 P.2d 178 (1954); *Stern v. Miller*, 348 So.2d 303 (Fla.1977); *McKillip v. Zimmerman*, 191 N.W.2d 706 (Iowa 1971); *State v. Sanders*, 538 S.W.2d 336 (Mo.1976); *Drabbels v. Skelly Oil Company*, 155 Neb. 17, 50 N.W.2d 229 (1951); *Graf v. Taggert*, 43 N.J. 303, 204 A.2d 140 (1964); *Endresz v. Friedberg*, 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901 (1969); *Gay v. Thompson*, 266 N.C. 394, 146 S.E.2d 425 (1966); *Hogan v. McDaniel*, 319 S.W.2d 221 (Tenn.1958); *Nelson v. Peterson*, 542 P.2d 1075 (Utah 1975); *Lawrence v. Craven Tire Company*, 210 Va. 138, 169 S.E.2d 440 (1969). For a further analysis of the cases in various jurisdictions, see Annotation at 84 ALR 3d 411 (1978).

Moreover, the commentators on the subject of death actions for unborn children are virtually unanimous in favor of recovery for viable stillborn infants, and a majority would go further than the courts and allow recovery even for nonviable infants. *See*, e. g., S. Speiser, *Recovery for Wrongful Death*, Section 4:38, page 564 (2d ed. 1975); Comment, *Mone vs. Greyhound Lines, Inc.: A Limited Advance in the Law of Prenatal Wrongful Death*, 11 N.Eng.L.Rev. 669 (1976); 7 Tex.Tech L.Rev. 821 (1976); 21 Vill.L.Rev. 994 (1975–1976); Comment, *Wrongful Death and the Unborn*, 13 J.Fam. Law 99

reasoned position, and more attuned to the current state of medical knowledge regarding an unborn fetus, I would join the majority of the states which recognize such causes of action and would reverse the decision of the Superior Court.

This Court has recognized since 1960 that a child who is born alive may recover for prenatal injuries (even though it was a nonviable embryo at the time it was injured). *Sinkler v. Kneale*, 401 Pa. 267, 164 A.2d 93 (1960). In 1964 the Court of Appeals for the Third Circuit was faced with the task of determining whether this Court would hold that a cause of action accrues under the wrongful death and survival statutes for the wrongful death of a stillborn fetus. Since the right to maintain such an action generally depends upon whether a stillborn infant, had it survived, could have brought suit to recover damages for its prenatal injuries, 15 A.L.R.3d 992, 994 (1967), and since *Sinkler v. Kneale, supra*, affords a surviving infant a cause of action for prenatal injuries, the Court of Appeals concluded that Pennsylvania would align itself with the majority view. *Gullborg v. Rizzo*, 331 F.2d 557 (3d Cir. 1964).

The Third Circuit's prediction was proven faulty in *Carroll v. Skloff*, 415 Pa. 47, 202 A.2d 9 (1964). Appellants' brief, at 12–13, correctly identifies what I agree to be the major errors in *Carroll* which require its overruling.

*Carroll* justified its decision to deny recovery for stillbirths resulting from prenatal injuries in part by stating that problems in proof of causation and pecuniary loss were heightened where a stillborn is involved, but problems of proof should in no way affect the right to bring a death action.

(Such arguments) reincarnate the fallacious identity between evidentiary problems and a right of action which was made in the early cases on prenatal injury. The

(1973–74); 38 Temp.L.Q. 470 (1965); DelTufo, *Recovery for Prenatal Torts: Actions for Wrongful Death*, 15 Rutgers L.Rev. 61 (1960).

Viability is, in any event, not an issue in the instant case, inasmuch as it has been alleged in the Complaint that the fetus was eight months old. Therefore, the instant case would fall into the category of cases involving stillborn, viable infants.

problem of valuing the loss in pecuniary terms is solely one of evidence. A cause of action should be recognized; a stillborn's representatives should have the opportunity to present their case. If the damages claimed are overly speculative, the suit may be dismissed. DelTufo, *Recovery for Prenatal Torts; Actions for Wrongful Death,* 15 Rutgers L.Rev. 61, 78 (1960).

Thus, appellee's lament over the problems of causation is insufficient to bar the instant causes of action at the outset.

The *Carroll* Court also based its decision on the conclusion that the legislature never intended to provide for recovery by the estate of a stillborn child, because the Wrongful Death Act directs that the distribution of any sum recovered be in accordance with the schedule of distribution provided for the estate of an intestate. Since the intestate laws do not allow a child who is born dead to take property *from* an intestate, the Court reasoned, neither may a stillborn child have an estate which may be distributed according to the intestacy rules. The Court then concluded that since the legislature did not provide for stillborn children in the intestate laws, it must have meant to exclude them under the Wrongful Death Act also.

However, just as DelTufo, *supra,* sees a "fallacious identity" being made between evidentiary problems and the right of action, a similar identity has been made in *Carroll* between the right to bring the action and the mechanism provided to distribute the proceeds of the action. As it is noted in the excellent discussion of this facet of the *Carroll* decision in 38 Temp.L.Q. 470, 475 (1965):

> The Court took provisions of a (wrongful death) statute which, in effect, said that a recovery, *once awarded,* shall be distributed as in the case of intestacy, and used these distribution provisions to decide whether or not the award shall be made at all. By the very terms and scheme of the statute, the provisions for distribution never come into play until after the substantive issue of liability has been decided. (emphasis in original).

The majority states that the requirement of live birth is "in some sense an arbitrary requirement, but the line must be drawn somewhere . . . ." (Slip opinion at 6). I disagree. The alternative to drawing an arbitrary line anywhere is to recognize the cause of action generally while, of course, maintaining the not-insubstantial burden of proving causation in each case. Modern medical science has advanced to such a state that many of the heretofore existent causation gaps can now be closed. That such gaps might remain open in some cases should preclude recovery *in those cases* for failure to meet the burden of proof of causation, but should not invalidate those causes of action for which expert medical testimony can bridge the gap. Thus, rather than drawing a line at the birth of a child, viability or some arbitrary period of gestation, I would simply allow the action to proceed to trial and let the orderly production of evidence by the adversaries draw its own line.

For the foregoing reasons, I would overrule *Carroll v. Skloff, supra,* and *Marko v. Philadelphia Trans. Co.,* 420 Pa. 124, 216 A.2d 502 (1966) and would, accordingly, reverse the order of the Superior Court and remand to the Court of Common Pleas for proceedings consistent with this opinion.

KAUFFMAN, J., joins in this dissenting opinion.